JOURNAL ENTRY AND OPINION
{¶ 1} On February 24, 2006, the Cuyahoga County Grand Jury indicted Defendant-appellant Shakeila Blackmon ("Blackmon") on two counts of drug trafficking, each with a juvenile specification; one count of drug possession, namely heroin in an amount equal to or exceeding fifty grams but less than two hundred fifty grams; one count of possessing criminal tools; and two counts of endangering children.
 {¶ 2} On May 3, 2006, Blackmon pleaded guilty to one count of drug trafficking less the juvenile specification, and to one count of drug possession, the remaining counts were nolled.
 {¶ 3} On June 23, 2006, the trial court sentenced Blackmon to one-year imprisonment and suspended her driver's license for two years upon release.
 {¶ 4} The events giving rise to the case sub judice occurred on January 10, 2006, on East 123rd Street and Lenacrave in Cleveland, Ohio. Blackmon and three codefendants participated in the sale of heroin. Blackmon was seven months pregnant at the time. Blackmon allegedly conducted the drug transaction in the presence of her two children, ages eight years and nine months, respectively.
ASSIGNMENT OF ERROR NUMBER ONE "Defendant was denied due process of law when the court, without notice added a condition of court supervised release to defendant's surety bail bond." *Page 3 
 {¶ 5} Under the federal constitution, an offender is guaranteed the right to notice and a hearing. State v. Dyer, Cuyahoga App. No. 88202,2007-Ohio-1704. A review of the docket reveals that the court provided notice to defense counsel of the addition of court supervised release to Blackmon's surety bail bond on March 23, 2006. The court stated, "First pretrial set for 3/29/06 at 9:00 am. CSR added as bond condition. Defense attorney notified and ordered to send defendant to the 5th floor of the Marion Building at the first PT."
 {¶ 6} Blackmon cites to United States v. Scott (C.A.9, 2006),450 F.3d 863, in support of her contention that random drug testing required of a person released on bond is unconstitutional. However said case is inapposite here, because the court did not require Blackmon to submit to random drug testing while released on bond. Here, Blackmon had notice as of March 23, 2006, that she would report to the Marion Building for drug testing at her first pretrial scheduled for March 29, 2006. As ordered, the court sent Blackmon to the Marion Building for drug testing on March 29, 2006.
 {¶ 7} Therefore, Blackmon's first assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER TWO "Defendant was denied a fair tribunal when the court acted as a prosecutor in interrogating defendant at sentencing."
 {¶ 8} Sentencing courts look to Crim.R. 32(A) which states in part:
 "At the time of imposing sentence, the court shall do all of the following: *Page 4 
 (1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."
 {¶ 9} However, the United States Supreme Court has held that upon entering a guilty plea, the privilege of self-incrimination is not waived for purposes of sentencing. Mitchell v. United States (1999),526 U.S. 314, 119 S.Ct. 1307. "Treating a guilty plea as a waiver of the privilege at sentencing would be a grave encroachment on the rights of defendants." Id. There exists no basis to distinguish between the guilt phase and the penalty phases of trial for purposes of theFifth Amendment privilege. Estelle v. Smith (1981), 451 U.S. 454,101 S.Ct. 1866. Specifically, the Estelle court held that "[a]ny effort by the State to compel respondent to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment." Id.
 {¶ 10} The trial court in the case sub judice provided Blackmon with the opportunity to make a statement on her own behalf pursuant to Crim.R. 32(A). The following colloquy ensued:
 "COURT: Is there anything you would like to say? You don't have to speak if you don't wish.
 DEFENDANT: Yes, I am not a user of any substance * * *. I don't know what that's about. I had to be incarcerated to learn from other inmates here in the jail that there are some things that I am not to consume while I am under probation.
 COURT: What do you think it is that made you test positive? *Page 5 
 DEFENDANT: Well, I eat all sorts of things. I eat bagels. But I don't —
 COURT: Ms. Blackmon, you don't want to go down this road with me.
 DEFENDANT: Well, I am just telling you, because I didn't experiment with marijuana when I was a teenager. Cigarettes and drink, but no marijuana.
 COURT: You tested positive twice for me on CSR. It is interesting that you are now trying to tell me a story about food and marijuana, because on the PSI the probation officer stated that you clearly misrepresented your involvement in this.
 You don't seem to have a real good grasp on the truth.
 DEFENDANT: Ms., I don't get that. Could you explain that to me, please?
 COURT: Yes. You are lying. That's what I'm saying.
 DEFENDANT: I don't know what to say. If you are telling me that I am lying, I don't want to argue with you.
 COURT: You better not argue with me. Because drug tests don't lie.
 You tested positive twice, now you are going to try and give me some kind of story about food. It is bad enough that you are in front of me because you committed a crime. Compounding that, using heroin, and it is trafficking and there is a gun and you were pregnant and there were co-defendants. And there were children present.
 DEFENDANT:Yes. *Page 6 
 COURT: Now you are going to compound it further by lying to me.
 DEFENDANT: Your Honor, I am being [as] honest with you as I can.
 COURT: Really? Then tell me honestly what happened that day.
 DEFENDANT: What honestly happened that day was I was inside of the store and someone came in, Jeff Daniel came in the store, the person with the heroin.
 COURT: Hairon? It is heroin and you know it is heroin.
 DEFENDANT: Okay. Excuse my pronunciation.
 COURT: Because you know better and you are playing games with me.
 DEFENDANT: No, I am not playing games with you.
 COURT: Yes, you are playing games with me, Ms. Blackmon. Got your boyfriend to take the fall for you in this case. You were clearly involved in the sale of these drugs. You pled guilty to them and now you are standing in front of me acting like you were on some kind of a soiree, I had no idea what was going on.
 Do you want to tell the truth or not? This is your last chance.
 DEFENDANT: Your honor, I am beginning to tell you the story of what happened.
 COURT: What were you doing with the drugs?
 DEFENDANT: Selling them.
 COURT: Why? *Page 7 
 DEFENDANT: I can't explain. I don't know.
 COURT: You don't know? You were seven months pregnant, selling heroin, and you can't tell me why?
 DEFENDANT: No. Honestly I can't.
 * * *
 COURT: You told the PSI writer you didn't think this money was about drugs, and now you are telling me you were selling. Which one is it?
 DEFENDANT: I was selling.
 COURT: Well, I'm glad you finally decided to tell the truth, because you just saved yourself the full maximum sentence of 18 months."
 {¶ 11} The colloquy in the case sub judice is closely related to that in State v. Sanders, Cuyahoga App. No. 75398, 2000 Ohio App. LEXIS 1651. In Sanders, the trial court pressed the defendant to tell the truth as to what transpired during the commission of the crime. The court voiced its opinion that Sanders was not telling the truth. To provide Sanders with the weekend to contemplate his statement to the court, the court rescheduled the sentencing hearing for the following Monday. On Monday, Sanders recanted his statement from the prior week stating, "I just tried to say anything I felt you might want to hear." Id.
 {¶ 12} In the instant case it appears that Blackmon, in her statement to the court, eventually told the truth. It also appears that the manner in which Blackmon was questioned by the trial court is similar to the line of questioning in Sanders. *Page 8 
However, Blackmon did not recant her statement as Sanders did. Nor has Blackmon provided any evidence that the State compelled her to testify against her will at the hearing. Therefore, Blackmon's second assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER THREE Defendant was denied due process of law when the court proceeded to sentence the defendant based on claims to which she did not enter a plea of guilty.
 {¶ 13} Blackmon argues that the trial court violated her due process rights when it sentenced her for having two positive drug tests while under court supervised release. We disagree.
 {¶ 14} Blackmon is serving one-year in prison, a term well within the statutory range for fourth degree drug trafficking. A trial court must consider the purposes of felony sentencing pursuant to R.C. 2929.11 and the factors set forth in R.C. 2929.12 when imposing a sentence. Said factors include: those relating to the seriousness of the conduct, the likelihood of the offender's recidivism, and any other relevant factors.
 {¶ 15} Here, the trial court considered Blackmon's education, her children, that she was pregnant when she sold the heroin, that there were children present during the transaction, that the transaction involved three codefendants, that there was a gun present, and that Blackmon eventually told the truth during the hearing. There *Page 9 
exists no evidence that the trial court sentenced Blackmon for twice testing positive for marijuana during her court supervised release.
 {¶ 16} Blackmon's third assignment of error lacks merit and is overruled.
ASSIGNMENT OF ERROR NUMBER FOUR Defendant was denied due process of law when the court sentence [sic] her to prison where there is evidence of drug addiction.
 {¶ 17} Blackmon argues that because of her drug addiction she is entitled to drug treatment in lieu of a prison sentence. Specifically, Blackmon argues that her sentence violates the mandate of R.C.2929.13(E), which states:
 (2) If an offender who was convicted of or pleaded guilty to a felony violates the conditions of a community control sanction imposed for the offense solely by reason of producing positive results on a drug test, the court, as punishment for the violation of the sanction, shall not order that the offender be imprisoned * * *.
 {¶ 18} Blackmon tested positive while under court supervised release, not while under community control sanctions as mandated by R.C.2929.13(E). Thus, R.C. 2929.13 is inapposite to the instant case.
 {¶ 19} A review of the record also reveals that Blackmon's counsel did not invoke drug addiction as a mitigating factor at the sentencing hearing; nor has Blackmon demonstrated that testing positive for drugs is prima facie evidence of addiction. Therefore, we find the trial court's presumption in favor of a prison term was appropriate. Blackmon's fourth assignment or error is without merit.
ASSIGNMENT OF ERROR NUMBER FIVE *Page 10 Defendant was denied due process of law when the court did not sentence defendant to a minimum sentence of six (6) months.
 {¶ 20} Blackmon argues that as a first time offender, and as a mother, her one-year prison sentence is clearly disproportionate and that she was entitled to a presumption of community control sanctions or in the alternative to a minimum six-month prison sentence. We disagree.
 {¶ 21} Due process, under the United States Constitution, guarantees an offender the right to notice and a hearing. Dyer, supra. However,State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, does not implicate an offender's right to a hearing. Thus, we are concerned only with Blackmon's notice as to her potential sentence. The Foster court held nonexistent the remedy of presumptive minimum sentences.
 [T]he General Assembly provided a sentencing scheme of `guided discretion' for judges, intending that the required findings guide trial courts to select sentences within a range rather than to mandate specific sentences within that range. When mandatory sentences are intended, they are expressed. We, therefore, reject the criminal defendants' proposed remedy of presumptive minimum sentences, for we do not believe that the General Assembly would have limited so greatly the sentencing court's ability to impose an appropriate penalty. Id.
In other words, Blackmon is not entitled to a presumptive minimum sentence.
 {¶ 22} Finally, Blackmon's due process rights are not violated upon denial of a presumptive minimum sentence. Blackmon had notice that the sentencing range upon committing the offense was the same as when she was sentenced. *Page 11 
 {¶ 23} In State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715, the Eighth District Court of Appeals held that:
 "Mallette had notice that the sentencing range was the same at the time he committed the offense as when he was sentenced. Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, nor did it create the possibility of consecutive sentences where none existed. As a result, we conclude that the remedial holding in Foster does not violate Mallette's due process rights * * * contained therein.
Similarly, as in Mallette, we conclude that Blackmon's due process rights were not violated. Blackmon does not assert that she lacked notice regarding her sentencing range or that Foster judicially increased the range of her sentence; nor does she assert thatFoster retroactively applied a new statutory maximum to an earlier committed crime or created the possibility of consecutive sentences where none existed. Blackmon argues merely that she should be sentenced to community control sanctions or a minimum six-month prison term.
 {¶ 24} Blackmon's fifth assigment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. A *Page 12 
certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 FRANK D. CELEBREZZE, JR. A.J., and SEAN C. GALLAGHER, J., CONCUR *Page 1